## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRENT WEBBER,<br><br>       Plaintiff,<br><br>     v.<br><br>SAG-AFTRA & SEAN ASTIN,<br><br>       Defendants. | Civil Action No. 26-3003 (SDW) (MAH)<br><br><br>REPORT & RECOMMENDATION |

### I.  INTRODUCTION

Presently before the Court is the motion of Plaintiff pro se Brent Webber ("Plaintiff") to remand this matter to state court, pursuant to 28 U.S.C. § 1447(c).  Mot. to Remand, Mar. 27, 2026, D.E. 13.  Defendants SAG-AFTRA and Sean Astin ("Astin" and, together with SAG-AFTRA, "Defendants") oppose the motion, and Plaintiff filed a reply.  Defs.' Opp'n, Apr. 13, 2026, D.E. 25; Pl.'s Reply, Apr. 17, 2026, D.E. 27.  The Honorable Susan D. Wigenton, U.S.D.J., has referred the motion to the Undersigned for a Report and Recommendation.[1]  *See* Local Civ. R. 72.1(a)(2).  The Undersigned did not hear oral argument and has considered this matter on the papers.  Fed. R. Civ. P. 78; Local Civ. R. 78.1.  For the reasons set forth below, the Court respectfully recommends that the District Court **DENY** Plaintiff's motion to remand.

---

[1]  A decision to remand is dispositive.  *In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998) ("[A]n order of remand is no less dispositive than a dismissal order of a federal action for lack of subject matter jurisdiction where a parallel proceeding is pending in the state court.").

## II.   BACKGROUND[2]

Plaintiff is an independent filmmaker who financed, wrote, directed, and produced a movie.[3]  D.E. 8 ¶¶ 2, 21.  Plaintiff took out lines of credit and used his life savings to fund the movie.  *Id.* ¶ 21.  SAG-AFTRA, a labor union representing entertainment industry performers, has authority to clear independent productions with respect to certain professional activities.  *Id.* ¶ 22; Notice of Removal, D.E. 1 ¶ 1.  Astin is SAG-AFTRA's President.  D.E. 8 ¶ 23.

At some point unclear from Plaintiff's Complaint, Plaintiff wanted to hire performers for the film who were covered by SAG-AFTRA.  *See* Ex. E, D.E. 8-2, at 18; *see also* Ex. U, D.E. 8-3, at 8 (an April 15, 2025 email from SAG-AFTRA business representative Jacob Richman ("Richman") to Plaintiff requesting outstanding documents to receive SAG-AFTRA clearance for the movie).

On October 16, 2025, Richman emailed Plaintiff regarding two topics:  (1) "a client who has a deal memo to work on this project but is not included on the most recent Pre-Production cast list," and (2) an issue regarding consultants Plaintiff hired.  Ex. M, D.E. 8-2, at 36.  Regarding the consultant issue, SAG-AFTRA found a "discrepancy between the salary listed in the Performer Agreement and the amount listed in the Escrow Agreement and will be forced to assume that the amounts described in the escrow agreement are in connection with them

---

[2]  After Defendants removed the case to federal court on March 24, 2026, Plaintiff filed a document notated on the docket as an "Amended Complaint" on March 25, 2026.  D.E. 8.  Accordingly, the following facts are derived from that filing, and the Undersigned shall refer to D.E. 8 as it is named on the docket.  Because Plaintiff is pro se, the Court will construe the Complaint liberally.  *See, e.g.*, *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

[3]  "'New York Rom Com' is about a Wall Street lawyer [who] has always wanted to be a filmmaker but is trapped in the rat race . . . and by his bridezilla fiancé.  That is, until he meets a passionate Colombian entrepreneur, and their love sparks the courage he needs to finally pursue his dreams."  Ex. A, D.E 8-2, at 4.

providing acting services." *Id.*  Plaintiff sent follow-up emails that same day, reiterating that the three individuals in question were being paid for marketing, not acting services.  Ex. S, D.E. 8-3, at 2-3.  Leif Larson ("Larson"), an SAG-AFTRA entertainment contracts manager, noted that the union considered those employees "[p]ensionable" and thus directed Plaintiff to "revise [his] budget accordingly to include payment of [Pension & Health ("P&H")] contributions."  Ex. V, D.E. 8-3, at 10.  Plaintiff and SAG-AFTRA employees also exchanged follow-up emails regarding the cast list issue, culminating in an October 18, 2025 email in which Plaintiff stated he "clearly and plainly did not wish to employ" the actor at issue.  Ex. R, D.E. 8-2, at 52.

It is unclear from the exhibits attached to Plaintiff's Complaint how these issues were resolved before October 20, 2025, when Richman emailed Plaintiff requesting a security deposit in the amount of $30,585.14 so that SAG-AFTRA could conditionally clear the film.  Ex. C, D.E. 8-2, at 12.  The email indicated that "SAG-AFTRA covered performers may not travel, rehearse, or participate in table readings until the signatory process is completed and the production is cleared."  *Id.*  Plaintiff paid SAG-AFTRA $30,585.14 that same day.  *Id.* at 11.

On October 21, 2025, after the security deposit was received, the film received conditional clearance under the terms of SAG-AFTRA's Ultralow-Budget Project Agreement ("UPA").  Ex. E, D.E. 8-2, at 17; *see also id.* at 18 (email from SAG-AFTRA to Plaintiff noting that "[u]pon confirmed receipt of the Security Deposit, the Union will grant conditional clearance for the production to employ SAG-AFTRA members and Professional Performers for covered services on the UPA").  Plaintiff signed adherence letters, which were "required to be signed as this provides the contract privity between your production company and the Union to adhere the company as signatory to the Union's Collectively Bargained Agreement (CBA).  It is

a prerequisite to clearance and required of all Independent producers who wish to employ SAG-AFTRA talent in the signatory process." *Id.*

The Court gleans that on December 5, 2025, Plaintiff, under the name of his production company, "B0X ROMCOM LLC," applied for the New Jersey Economic Development Authority's ("NJDEA") Film Tax Credit Program. Ex. A, D.E. 8-2, at 4. The application was deemed complete on December 24, 2025. *Id.* at 6. The proposed award totaled $75,023.00 and the project summary noted a production start date of October 24, 2025. *Id.*

On December 10, 2025, Richman confirmed receipt of Plaintiff's documentation. Ex. K, D.E. 8-2, at 31. Although Richman noted that the "paperwork . . . looked good to" him, he notified Plaintiff that he sent the "Final Cast List to P&H to review." *Id.* After P&H confirmed Plaintiff's contributions, the union would then "move on to returning [Plaintiff's security] deposit." *Id.*; *see also* Ex. E, D.E. 8-2, at 17 (describing necessary P&H contributions).

On December 22, 2025, Plaintiff asked Richman for an estimated timeframe to receive his security deposit. Ex. HH, D.E. 8-3, at 38. Having received no response, Plaintiff sent follow up emails on January 5 and 6, 2026. *Id.* On January 6, 2026, Richman responded, apologized for the delay, and told Plaintiff he would reach out to P&H for an update on its review—hoping to have a concrete response by the end of the week. Ex. N, D.E. 8-2, at 39. Plaintiff followed up again on January 9, 2026. *Id.* On January 12, 2026, Richman responded that, although P&H "didn't mention any specific problems or issues," with Plaintiff's paperwork, they were "still reviewing" and "within the 3-4 week turnaround period they typically tell us to expect (especially with the holidays)." *Id.* Plaintiff sent several follow-up emails, but there was no update. *See* Ex. II, D.E. 8-3, at 40.

On January 26, 2026, Plaintiff again asked for an update, expressing that he felt the delay was "completely unacceptable and unprofessional" and requesting the identity of any relevant "legal part[ies]" or "supervisors[.]" Ex. JJ, D.E. 8-3, at 42. Defendant Astin was cc'd on this email. *Id.* On January 27, 2026, Plaintiff sent another follow-up request for a response and "appropriate names" on that day. Ex. O, D.E. 8-2, at 41. Richman responded that day, reiterating that P&H did not receive the cast list until the new year, the list was still under review, and P&H was still within the average three-to-four-week turnaround time. *Id.* Richman also requested that Plaintiff "refrain from cc'ing" Astin, as everyone he would need to speak to was already on the thread. *Id.* That response was "not acceptable to" Plaintiff, who stated it was now a "demand" to add SAG-AFTRA's "legal team and all requested individuals on all future correspondence." *Id.* Plaintiff accused SAG-AFTRA of "unlawfully holding funds that you have no legal claim to" and demanded the security deposit by the following week. *Id.*

On January 28, 2026, Anahit Ter-Akopyan, a contribution management collections representative, informed Plaintiff that "[three] performers earned gross wages for consulting fees. Please note consulting fees are also pensionable wages and therefore needs [sic] to be reported . . . Please review and advise . . .when payment will be processed." Ex. J, D.E. 8-2, at 28. Although Richman had previously requested that Plaintiff refrain from cc'ing Astin, Astin was cc'd on this email. *Id.* It is unclear from the exhibits whether Plaintiff responded.

On February 17, 2026, Larson emailed Plaintiff. Ex. KK, D.E. 8-3, at 44. The letter advised Plaintiff that P&H and SAG-AFTRA were separate organizations. *Id.* Larson referenced the security deposit letter, which was attached to the email but not provided with the exhibit. Larson wrote that Plaintiff's security deposit would not be returned until SAG-AFTRA "received confirmation from P&H that all required contributions were made on behalf of the

performers." *Id.* Larson encouraged Plaintiff "to continue your discussions with P&H" to resolve the issue and reminded Plaintiff that the "process requires [SAG-AFTRA] to receive all required documentation and clearance in order for [SAG-AFTRA] to return the security deposit." *Id.* Astin was cc'd on this email as well.

On March 18, 2026, Plaintiff filed an eleven-count Complaint in the Superior Court of New Jersey, Law Division, Hudson County, against Defendants SAG-AFTRA, Astin, and various John Does. Notice of Removal, Ex. 1, Compl., D.E. 1-1. Plaintiff brought against all Defendants claims of conversion (Count One), fraud in the factum (Count Two); fraud in the inducement (Count Three), promissory and equitable estoppel (Count Four), tortious interference with prospective economic advantage (Count Five), tortious interference with contract (Count Six), fraudulent inducement (Count Seven), intentional infliction of emotional distress (Count Eight), unjust enrichment (Count Nine), breach of the implied covenant of good faith and fair dealing (Count Ten), and accounting (Count Eleven). *See* Am. Compl., D.E. 8 ¶¶ 120-201. Plaintiff seeks declaratory and injunctive relief in addition to a variety of damages.

Defendants timely removed the action to federal court pursuant to 28 U.S.C. §§ 1331 and 1441(a). Notice of Removal, Mar. 24, 2026, D.E. 1 ¶ 22. Specifically, Defendants assert this court has federal question jurisdiction over the case because Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 ("§ 301") completely preempts Plaintiff's state law claims. *Id.* ¶ 23.

Plaintiff timely filed the instant motion to remand. Mot. to Remand, Mar. 27, 2026, D.E. 13. On March 31, 2026, Plaintiff, without leave of court,[4] also filed a notice of supplemental

---

[4] Because Local Civil Rule 7.1(d), which governs the filing of motion papers, does not contemplate or otherwise mention supplemental briefs, the Court will not consider the notice of supplemental authority at D.E. 17. Plaintiff will not be prejudiced, however, because the

authority in support of the motion to remand.  D.E. 17.  On April 13, 2026, Defendants opposed.

Defs' Opp'n, D.E. 25.  On April 17, 2026, Plaintiff replied to that opposition.[5]  Pl.'s Reply, D.E.

27.

### III.   DISCUSSION

#### A.   REMOVAL AND § 301 PREEMPTION

A federal court lacking subject matter jurisdiction over a removed case must remand the

matter back to state court.  28 U.S.C. § 1447(c).  Removal of a civil case to federal court is

governed by 28 U.S.C. §§ 1441 and 1446.  Removal statutes must "be strictly construed against

removal and all doubts should be resolved in favor of remand."  *Batoff v. State Farm Ins. Co.*,

977 F.2d 848, 851 (3d Cir. 1992) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809

F.2d 1006, 1010 (3d Cir. 1987)).  Generally, the party seeking removal bears the burden of

establishing that removal is proper.  *See Rosebud Holding L.L.C. v. Burks*, 995 F. Supp. 465, 467

(D.N.J. 1998).

Defendants may remove actions from state to federal court under 28 U.S.C. § 1441(a)

only when the federal court has original jurisdiction.  *Caterpillar, Inc. v. Williams*, 482 U.S. 386,

392 (1987).  "Federal district courts have original jurisdiction over 'all civil actions arising under

the Constitution, laws, or treaties of the United States.'"  *Id.* at n.6 (quoting 28 U.S.C. § 1331);

*see also Louisville & Nash. R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

---

arguments presented in the notice of supplemental authority are encompassed in Plaintiff's reply brief.

[5]  Although Local Civil Rule 7.2(b) limits reply briefs to fifteen pages, Plaintiff's reply brief was twenty-five pages.  "Briefs of greater length will only be accepted if special permission of the Judge is obtained prior to submission of the brief."  Local Civ. R. 7.2(b).  Plaintiff did not request permission to submit a reply brief more than fifteen pages.  However, given Plaintiff's status as a pro se litigant, and because Defendants did not object to Plaintiff's overlength reply brief, the Court will consider the brief in full.

The "well-pleaded complaint rule" typically governs the issue of federal question jurisdiction, providing federal question jurisdiction exists only when the "face of the plaintiff's properly pleaded complaint" presents a federal question. *Caterpillar*, 482 U.S. at 392; *Mottley*, 211 U.S. at 152. Such a claim arises "when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." *Mottley*, 211 U.S. at 152. A plaintiff can thus avoid the federal forum by pleading only state law claims, forgoing federal causes of action. *Caterpillar*, 482 U.S. at 392 n.7 (citations omitted).

An exception to the well-pleaded complaint rule is the doctrine of complete preemption, which "operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint." *N.J. Carpenters v. Tishman Constr. Corp.*, 760 F.3d 297, 302 (3d Cir. 2014) (quoting *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999)).

One example of complete preemption arises under § 301, which provides, in pertinent part:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any District Court of the United States having jurisdiction over the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). "In enacting § 301 of the LMRA, Congress vested jurisdiction in the federal courts over suits for contract disputes between employers and labor unions representing certain industries." *Costa v. Verizon N.J., Inc.*, 936 F. Supp. 2d 455, 458 (D.N.J. 2013). The Supreme Court of the United States has held that § 301 completely preempts state law causes of action arising out of collective bargaining agreement violations. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962). "[T]he preemptive force of § 301 applie[s] to tort, as well as contract, suits

8

implicating 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement.'" *Costa*, 936 F. Supp. 2d at 459 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). Suits for contract violations between labor organizations and employers thus arise under federal law, even if a state law cause of action would exist without § 301. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Ca.*, 463 U.S. 1, 23 (1983).

The Court has also acknowledged, however, that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Lueck*, 471 U.S. at 211. That is because Congress did not intend "to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* Accordingly, "a state law claim will be found to be preempted by § 301 if the claim is: (1) founded directly on rights created by a collective-bargaining agreement, or (2) substantially dependent upon an analysis of a collective bargaining agreement." *Costa*, 936 F. Supp. 2d at 459 (citing *Shanefelter v. U.S. Steel Corp.*, 784 F. Supp. 2d 550, 558 (W.D. Pa. 2011)). If a plaintiff's "claim is inextricably intertwined with consideration of the terms of the labor contract . . . that law is pre-empted." *Lueck*, 471 U.S. at 213.

For example, in *Fischer v. G4S Secure Solutions USA, Inc.*, No. 10-6792, 2011 WL 3859742 (D.N.J. Aug. 31, 2011), the plaintiff filed a lawsuit in state court against his union and former employer. *Id.* at *1. After the employer removed the case to federal court based on § 301 preemption, the union and claims against it were dropped from the case. *Id.* at *2. The plaintiff argued that the only remaining claim, breach of contract against the employer for failing to

9

follow the employee manual, fell outside § 301's preemptive force because it did not require interpretation of the union's collective bargaining agreement. *Id.* at 2-3.

The *Fischer* court recognized that in New Jersey, "an employee manual can create an independent contractual obligation apart from the employment contract." *Id.* at *3. But the employee manual in *Fischer* did not create independent contractual rights, because they were "subject to modification by Plaintiff's larger employment contract." *Id.* at *4. Because the court needed to analyze the employee manual alongside the collective bargaining agreement to determine the plaintiff's breach of contract claim, the plaintiff's claim was preempted by § 301. *Id.*

A similar situation arose in *Johnson v. NBC Universal, Inc.*, 409 F. App'x 529 (3d Cir. 2010). The *Johnson* plaintiff belonged to a union that negotiated a collective bargaining agreement with the defendant ("NBC"). *Id.* at 530. Part of that agreement "authorized the [u]nion to directly negotiate form deal memoranda on behalf of its members." *Id.* The deal memoranda were between the employee and employer "and contain[ed] additional employment provisions specific to the employer[,]" including, in *Johnson*, NBC's "Policy Against Harassment." *Id.* The plaintiff sued NBC in state court, alleging he was harassed in violation of that policy.

NBC removed the action to federal court, arguing that § 301 preempted the plaintiff's claims. *Id.* The plaintiff moved to remand, arguing that the federal court lacked subject matter jurisdiction. *Id.* The district court denied the motion to remand, agreeing with the defendants that the plaintiff's claims were preempted by § 301. *Id.* The district court also dismissed the case, because the plaintiff failed to exhaust the collective bargaining agreement's grievance and arbitration procedures. *Id.* The plaintiff appealed only the court's denial of his motion to

10

remand, arguing that his case was "not substantially dependent on interpretation of a collective bargaining agreement." *Id.*  The Third Circuit affirmed.  *Id.*  The Third  reasoning that because the collective bargaining agreement and Policy Against Harassment "together memorialize the terms of agreement negotiated between NBC and the [u]nion," both documents "would need to be interpreted to determine which is controlling." *Id.* at 531-32.  Accordingly, § 301 completely preempted the plaintiff's claims.

In *Costa*, the plaintiff worked for the defendant ("Verizon"), which had a Code of Conduct.  936 F. Supp. 2d at 457.  The plaintiff's union had a collective bargaining agreement with Verizon.  *Id.*  After the plaintiff reported a co-worker's job performance, Verizon terminated the plaintiff.  *Id.*  The plaintiff's first state court complaint pleaded claims under New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq.*  *Id.*  The plaintiff then amended his state court complaint to add claims arising out of Verizon's Code of Conduct, including breach of contract, wrongful discharge, and breach of the covenant of good faith and fair dealing.  *Id.*  The plaintiff again amended the state court complaint and argued that the claims arising out of the Code of Conduct also were based on the collective bargaining agreement.  *Id.*  Verizon then removed the case to federal court based on § 301 preemption, and the plaintiff subsequently moved to remand.  *Id.*  Thereafter, the plaintiff filed a third amended complaint which attempted to eliminate federal question jurisdiction by removing any mention of the collective bargaining agreement.  *Id.*

Because Verizon failed to timely remove, the *Costa* court granted the motion to remand. *Id.* at 468.  The court found preemption, however, reasoning that "in order to successfully adjudicate Costa's claims, joint consideration of the terms of the Code of Conduct and collective bargaining agreement will be necessary." *Id.* at 463.  Accordingly, the court found that § 301

preempted the plaintiff's claims despite his attempt to remove them from the operative complaint. *Id.*

*Fischer*, *Johnson*, and *Costa* make clear that, even if a state court complaint alleges only state law claims and lacks reference to any collective bargaining agreement, if adjudicating those claims requires interpreting a collective bargaining agreement, federal courts have subject matter jurisdiction because § 301 of the LMRA completely preempts those claims.

## B. ANALYSIS

The Undersigned respectfully recommends that, because § 301 completely preempts Plaintiff's claims, the Court has subject matter jurisdiction over this case, and remand is not appropriate.

Plaintiff argues that this Court should remand because the Complaint contains only state law claims. D.E. 13, at 3. Plaintiff avers that Defendants are attempting to manufacture federal question jurisdiction by mischaracterizing Plaintiff's state law claims as labor disputes. Plaintiff asserts that the $30,585.14 security deposit is linked to the NJDEA Tax Credit Program, thus obviating the need to interpret any collective bargaining agreement entered by the parties. *Id.* at 4. Further, Plaintiff, relying on *Atalese v. U.S. Legal Services Group, L.P.*, 219 N.J. 430 (2014), contends that there is no agreement for the court to interpret because any agreements between the parties are void *ab initio*. *Id.* Plaintiff finally argues that Defendants have engaged in bad faith removal practices and, accordingly, requests costs.

Defendants argue that § 301 completely preempts Plaintiff's claims. D.E. 25, at 11. Defendants assert that Plaintiff's claims cannot be resolved without interpreting a collective bargaining agreement. *Id.* Defendants contend that if even one claim turns on interpreting a

12

collective bargaining agreement, then federal question jurisdiction exists for the entire case. *Id.* at 16.

Plaintiff's reply asserts Defendants improperly ignore the law governing removal, including but not limited to *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), which Plaintiff contends holds that "any doubt equals a mandatory remand." *Id.* at 3-6. Plaintiff also asserts that he built a "federal fence" around his claims by only asserting state law claims and not relying on collective bargaining agreements or federal law in his Complaint, and that "Defendants' silence" on those sections of the Complaint "constitutes a total waiver and concession that Plaintiff's territorial and commercial standing in New Jersey is factually uncontested[.]" *Id.* at 6-8. Plaintiff, invoking *Caterpillar*, reiterates that he is the "master of the complaint." *Id.* at 8-12. Plaintiff additionally argues that: Defendants are attempting to complicate matter by prematurely "shielding" Astin from liability, *id.* at 12; there is no contract for the court to interpret, so § 301 does not preempt his claims, *id.* at 14; at most, the Court only needs to examine the collective bargaining agreement as a "factual reference[,]" taking the court's analysis outside of § 301 preemption, *id.* at 16-17; Defendants attempt to "rewrite the record[,]" *id.* at 17; Defendants attempt to "conjure jurisdiction without meeting strict statutory requirements[,]"; *id.* at 19; and Defendants' removal was a "tactical evasion of [a] scheduled state court hearing[,]" *id.* at 22.

Plaintiff's arguments are unpersuasive. First, the Undersigned finds no evidence in the record to support Plaintiff's assertion that "Defendants converted a $30,585.14 cash bond linked to a New Jersey asset NJEDA Project ID: PROD-00323630[.]" Mot. to Remand, D.E. 13, at 4. That claim is inconsistent with the Amended Complaint, which states that "Plaintiff personally

13

initiated the remittance of the $30,585.14 Bond from his wholly and independently controlled bank account[.]"  D.E. 8, at 29 ¶ 66.

Furthermore, it is unclear to the Undersigned why Plaintiff repeatedly refers to the $30,585.14 payment he sent to SAG-AFTRA as a "bond."  *See e.g*, Ex. C, D.E. 8-2, at 11 ("[s]creenshot of the bond payment is here."); *see generally* Mot. to Remand, D.E. 13; Pl.'s Reply, D.E. 27.  As numerous exhibits reflect, Plaintiff did not pay a bond—Plaintiff placed a security deposit.  *See, e.g.*, Ex. W, D.E. 8-3, at 12.  That security deposit was necessary so that SAG-AFTRA could "grant conditional clearance for the production to employ SAG-AFTRA members and Professional Performers for covered services on the UPA."  Ex. W, D.E. 8-3, at 12.

Curiously, Plaintiff did not include the security deposit letter among his thirty-eight exhibits, even though the letter was attached to the February 17, 2026 email from Larson informing Plaintiff that SAG-AFTRA could not yet return the deposit.  *See* Ex. KK, D.E. 8-3, at 44.  Defendants, however, provided the letter in opposition to the instant motion.  Ex. A to Decl. of Matt Blackett ("Security Deposit Letter"), D.E. 25-2, at 1.  The Security Deposit Letter shows that on October 20, 2025, Plaintiff, as the authorized signatory for B0X RomCom LLC, paid a security deposit in the amount of $30,585.14.  *Id.*  The Security Deposit Letter provides that Plaintiff agreed that the money was:

> [t]o be held by SAG-AFTRA as security for the payment of all performers and background actors under the SAG-AFTRA jurisdiction.  We understand that this money will be returned when SAG-AFTRA is satisfied that all such performers and background actors have been paid who were engaged to render services in the production currently entitled "New York Rom Com" (the "Picture"), all claims have been paid, including any liquidated damages claims, all required Pension and Health contributions have been made, the Final Cast List, Casting Data Report, and all financial assurances as required pursuant to the applicable SAG-AFTRA collective bargaining agreements and requested by SAG-AFTRA have been provided.

14

. . . .

It is also understood that in the event we fail to make proper payments in accordance with the applicable SAG-AFTRA collective bargaining agreements, SAG-AFTRA is hereby authorized to make deductions from the security deposit to pay any outstanding contributions, and to settle any other outstanding claims.

*Id.*

At bottom, the Undersigned finds that Plaintiff's claims arise from SAG-AFTRA's withholding of the $30,585.14 security deposit. The Security Deposit Letter indicates that SAG-AFTRA does not need to return that deposit until certain conditions are satisfied. *Id.* And whether those conditions were satisfied here turns on whether Plaintiff "fail[ed] to make proper payments in accordance with the applicable SAG-AFTRA collective bargaining agreements." *Id.* Because adjudication of Plaintiff's claims is "substantially dependent upon an analysis of a collective bargaining agreement[,]" *Costa*, 936 F. Supp. 2d at 459, § 301 completely preempts Plaintiff's claims.

That is true despite Plaintiff's accurate assertion that a plaintiff is "the master of the complaint." *See Caterpillar*, 482 U.S. at 398-99. After all, "[t]he appropriateness of federal jurisdiction—or the lack thereof—does not depend on whether the plaintiff first filed suit in federal or state court. Rather, it depends, in either event, on the substance of the suit." *Royal Canin, U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 38-39 (2025). Generally, there is a simple rule for parties invoking federal question jurisdiction: "[i]f the complaint presents no federal question, a federal court may not hear the suit." *Id.* at 26.

But the preemption doctrine, as noted above, is a well-established exception to that general rule. *See e.g.*, *Costa*, 936 F. Supp. 2d at 468. In other words, even when a plaintiff

15

builds a "federal fence" by pleading state law causes of action only, preemption doctrine allows a defendant to jump over that fence. Where, as here, a defendant timely removes a case which cannot be resolved without interpreting a collective bargaining agreement, that defendant establishes subject matter jurisdiction, and the Court should hear the case. *See id.* (remanding to state court even when § 301 completely preempted the plaintiff's claims because the defendant failed to timely remove). Plaintiff's "claim[s are] inextricably intertwined with consideration of the terms of the labor contract[,]" so Plaintiff's claims are pre-empted. *Lueck*, 471 U.S. at 213.

To be clear, the Undersigned takes no position on the merits of Plaintiff's claims. Whether Plaintiff asserts viable claims is not relevant to the instant Report and Recommendation addressing Plaintiff's motion to remand. The Undersigned respectfully, and solely, recommends that those claims, viable or not, require interpretation of a collective bargaining agreement and must therefore be adjudicated in federal, not state, court.

## IV.    CONCLUSION

For the reasons set forth above, the Undersigned respectfully recommends that the District Court deny Plaintiff's motion to remand.

Under 28 U.S.C. § 636, and L. Civ. R. 71.1(c)(2), the parties have **fourteen (14)** days to file and serve objections to this Report and Recommendation.

**IT IS ORDERED** that the Clerk of the Court shall activate this Report and Recommendation for the District Court's review.


Date: May 21, 2026


_s/ Michael A. Hammer_
**UNITED STATES MAGISTRATE JUDGE**

16